PEOPLE ex rel. DEISTER v. WINTERMUTE.

(Supreme Court, Appellate Division, Third Department. November 27, 1907.)

1. WITNESSES—PRIVILEGE—WAIVER.
　　Though it is the policy of the state to protect the secrecy of the ballot, the right of a voter to refrain from disclosing how he voted can be claimed only by him, so that he may waive such privilege and testify for whom he voted.
　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 1053.]

2. ELECTIONS—CONTEST—VOTING MACHINES—EVIDENCE.
　　As the act permitting the use of voting machines requires that the elector shall register his choice by making a change in a counter capable of being read by the inspectors, the question whether or not an elector has voted being made to depend on a movement or change of the counter numbers, evidence in an election contest that in certain districts a number of qualified electors more than sufficient to change the result pulled down the lever of the machine over the column containing relator's name, but did not push back any of the pointers of that column, or make any effort to split the ticket, and that the machine did not, therefore, register such votes for relator, was inadmissible to show that more votes were cast for relator than were canvassed and returned.

3. SAME—CHANGE OF RESULT.
　　Such evidence was admissible to prove that, by reason of the failure of the machines to carry out the intent of the voters, relator had been deprived of more than enough votes to change the result, under the rule that, in quo warranto to determine the title to an office depending on a general election, the question is not only who received the greater number of votes, but whether defendant was legally elected.

Appeal from Special Term, Chemung County.

Quo warranto by the people, on the relation of John H. Deister, against Thomas J. Wintermute. From a judgment in favor of defendant, and from an order denying relator's motion for a new trial, on the minutes, he appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Michael Danaher, for appellant.
James Bacon, for respondent.

SEWELL, J. After the general election held in the county of Chemung on the 9th day of November, 1906, the county board of can-vassers canvassed the statements or returns of the board of inspectors of election, and determined that the defendant, Thomas J. Wintermute, the Republican candidate for the office of county treasurer, had received 4,720 votes, and that the relator, John H. Deister, the Democratic candidate for that office, had received 4,718 votes. The relator challenged the determination of the county board of canvassers, and this action was brought to determine whether the relator or the defendant was, by the greatest number of votes, elected treasurer of the county of Chemung.

It was an undisputed fact in the case that the original statements of canvass, made and signed by the inspectors of election, contained a true statement of the number of votes cast for the office of county treasurer, except the statements or returns from the First district of the Fourth Ward, the First district of the Fifth Ward, and the Second district of the Eleventh Ward of the city of Elmira, where United States standard voting machines were used. The relator conceded that the returns from the disputed districts contained a true statement of the vote therein as shown by the voting machines, but claimed that the machines were not in complete working order and were in such a defective condition that they did not correctly register the votes for the office of county treasurer. There was no question of fact presented as to the number of persons who entered the voting machines for the purpose of voting, or as to the number of votes actually registered by the counters of the machines. It was conceded that 273 electors entered the machine used in the First district of the Fourth Ward, and that only 199 votes were registered for the office of county treasurer, of which 27 were for the relator; that 314 voters entered the machine used in the First district of the Fifth Ward, and 226 were registered, of which 81 were for the relator; that 221 attempted to vote in the Second district of the Eleventh Ward, 168 votes were registered, of which 80 were for the relator.

The relator attempted to meet the burden of proof cast upon him by the returns of the inspectors and the certificate of election by offering to show, by 95 duly qualified electors of the First election district of the Fourth Ward, by 146 electors of the First election district of the Fifth Ward, and by 120 electors of the Second district of the Eleventh Ward, that at the election in question they pulled down the lever over column B, which was conceded to be the Democratic column and contained the name of the relator, and did not push back any of the pointers of that column, or make any effort to split the ticket. The defendant stipulated that these offers should have the same effect as though the witnesses were actually produced and were on the stand to testify, but objected to the evidence on the ground that it was incompetent, improper, and immaterial, in violation of the secrecy of the ballot, and contrary to the public policy of the state. The objection was sustained and an exception taken. This ruling presents the only question to be considered upon this appeal.

I think that the evidence was excluded upon the mistaken theory

that a voter may not be asked how or for whom he voted. It is the policy of the state to protect the secrecy of the ballot, so that the voter may freely exercise his choice without being subjected to intimidation or any other manner of control by others; but according to the weight of authority this protection can be claimed only by him. He may waive it, and testify in court for whom he voted. People v. Pease, 27 N. Y. 45, 84 Am. Dec. 242; People v. Thacher, 55 N. Y. 525, 14 Am. Rep. 312; 15 Cyc. 424. There can be no doubt that the evidence would have been relevant and proper, if it had tended to show that the electors voted when they pulled down the lever of the voting machine. It will be seen that the effect of the evidence would not have been to impeach the returns of the vote for the office of county treasurer in the disputed districts. It was undisputed that a vote is not registered by a voting machine for any person whose name appears in a party column as a nominated candidate for office, when the lever over it is pulled down; that this only indicates the choice of the voter, and that to give expression to the intention, or to manifest the choice effectively, it is necessary to turn the registering dial, voting wheel, or counter connected with the name of each candidate a fixed distance, which is done, when the machine is in complete working order, by throwing back the operating or curtain lever as the voter is about to leave the booth.

In permitting the use of voting machines the statute has, in effect, provided that any elector who desires to vote for a candidate must register his choice by making a change in a counter capable of being read by the inspectors, and which, by the understanding of all, expresses a vote for the candidate whose name is connected with the counter. It has made the question whether or not an elector has voted to depend upon a movement or change of the counter numbers. This is apparent from the character of the duty imposed upon the inspectors in canvassing the vote. They are only required to read, record, and return "the result as shown by the counter numbers." They are not called upon to determine whether the voting machine did or did not work correctly, or to correct any error, if one were made. The change or movement of the counter is the only means provided for expressing, carrying out, or determining the choice of the voter; and, as the very purpose of voting is to have it counted, it cannot be doubted that if a voter has not indicated his choice, so that it can be determined without intrinsic evidence of his intention, he has not voted, and it is a matter of no consequence whether the failure to express a preference is due to the condition of a ballot, the voluntary act of the voter, or to the defects in the mechanism or the operation of a voting machine. It follows, therefore, that the evidence offered would not have tended to show that more votes were cast for the relator than were canvassed and returned.

It was, however, pertinent and proper to prove that by reason of the failure of the machines to carry out and express the intent of the voters the relator was deprived of more than enough votes to change the result of the election. Upon a trial of quo warranto to determine the title to an office, depending upon a general election, the question is,

not only who received the greatest number of votes, but whether the defendant was legally and duly elected and entitled to discharge the duties of the office held by him, and this involves a determination of the legality of the election. People ex rel. Bush v. Thornton, 25 Hun, 456; People v. Pease, supra; People v. Thacher, supra. The evidence was clearly admissible upon the question whether there was not a fair and complete expression of popular will in the disputed districts.

I am therefore of the opinion that the judgment and order appealed from be reversed, and a new trial granted, with costs to abide event. All concur, except SMITH, P. J., not voting.